IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Akeem C. Mason,<br>　　Plaintiff, | )<br>)<br>) |
| v. | )　　Case No. 1:24cv68 (RDA/IDD) |
| Booth, *et al.*,<br>　　Defendants. | )<br>)<br>) |

MEMORANDUM and ORDER

Akeem C. Mason, a Virginia state prisoner, has filed a civil action pursuant to 42 U.S.C. § 1983 alleging defendants—Capt. Booth; Capt. Wesley Townsend; and Maj. P. Allen—violated his First Amendment, Due Process, and Eighth Amendment rights by suspending his video visitation for 90 days for allegedly using another inmate's account. Dkt. No. 1 at 4. Because Plaintiff is a prisoner, the Court must screen his complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. *See* 28 U.S.C. § 1915A.[1]

**I. Standard of Review**

Pursuant to § 1915A, a court must dismiss claims based upon "'an indisputably meritless legal theory,'" or where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted). Whether a complaint states a claim upon which relief

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

　　(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

　　(2) seeks monetary relief from a defendant who is immune from such relief.

can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

In order to screen a complaint, it must present a coherent, comprehensible, and intelligible document. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A § 1983 complaint must allege facts indicating that the plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Each named defendant in a § 1983 complaint must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to

proceed against that defendant. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010); *see Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (plaintiff must allege facts, not conclusions, "that show that an individual was personally involved in the deprivation of his civil rights."); *see also Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in § 1983 cases between named defendant and claimed injury).

A complaint must also comply with the requirements of Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and that each averment of a pleading be "simple, concise, and direct." Fed. R. Civ. P. Rule 8(a)(2) and Rule 8(e)(1). A court may dismiss a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

**II. Complaint**

The complaint alleges that Plaintiff's video visitation privileges were suspended in October 2023 for 90 days. Although Plaintiff's visitation was suspended in October 2023, he was not notified of the suspension until December 29, 2023. Dkt. No. 1 at 4. His visitation privileges were suspended because he used another detainee's account.[2] Plaintiff was not charged with a disciplinary offense or found guilty in a disciplinary hearing of any infraction and, therefore, the suspension of his visitation rights without being found guilty in a disciplinary hearing violated his First Amendment, Due Process, and Eighth Amendment rights. *Id.* Defendant Booth is the supervisor of visitation and he authorized the suspension; Defendant Townsend created the rule and enforced Plaintiff's suspension; and Defendant Allen answered Plaintiff's grievance. *Id.*

---

[2] Plaintiff does not deny the reason for his suspension of privileges.

3

### III. Discussion

It is unclear from the record whether Plaintiff is a pre-trial detainee or he has been convicted. In *Block v. Rutherford*, 468 U.S. 576 (1984), the Court upheld the jail's denial of all contact visits for pretrial detainees. *Id.* at 587-88. In its analysis, *Block* held that "'[the]re is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates,'" *Block v. Rutherford*, 468 U.S. 576, 587 (1984) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546, n. 28 (1979)), and applied the same analysis it had for prison settings.

*A. Visitation*

Contrary to Plaintiff's allegation that the 90 days suspension violated his First Amendment right of free association, the right to free association may be curtailed upon conviction for violation of the criminal laws. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977); *Thorne v. Jones*, 765 F.2d 1270, 1272 (5th Cir. 1985) (holding that "'visitation privileges [for convicted prisoners] are a matter subject to the discretion of prison officials.'"). The United States Supreme Court has long recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). *Pell v. Procunier*, 417 U. S. 817 (1974), addressed First Amendment rights in the context of incarceration holding that

> a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Id.* at 822. *Jones* reaffirmed *Pell* but also announced that federal courts must accord deference to the decisions of prison administrators.

> Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment

4

> protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's "status as a prisoner" and the operational realities of a prison dictate restrictions on the associational rights among inmates.
>
> Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.

433 U.S. at 125-26.

An oft cited case within the Fourth Circuit on the issue of visitation is *White v. Keller*, 438 F. Supp. 110, 116 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978), which granted summary judgment to the defendant and dismissed a constitutional challenge to a 90-day restriction on prisoner visitation imposed after some inmates were found with certain contraband. *White* observed that "[t]o the extent that the right to physical association is grounded in 'liberty,' it is obvious from the language of the fifth and fourteenth amendments that the state may wholly deprive one of it upon a criminal conviction. It is less obvious, but equally sensible, that the right is lost even if its source is the first amendment." *Id.* On appeal, the Fourth Circuit summarily affirmed *White* observed that the district court's decision was "thorough and carefully considered," and held that it was "correct." 588 F.2d at 913.

Here, given that the suspension was limited to 90 days, there are at least two reasons why the complaint does not state a claim. First, the United States Supreme Court upheld a two-years suspension of visitation privileges for inmates with two substance abuse convictions. *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). In addition, Plaintiff had alternative means of association— he could write a letter. *Overton* rejected the argument that letter-writing is not a legitimate alternative holding that "[a]lternatives to visitation need not be ideal, however; they need only be available." 539 U.S. at 135.

*B. Due Process*[3]

To the extent Plaintiff alleges the temporary suspension of his video visitation privileges violated due process, an inmate has no due process right to "unfettered visitation." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("an inmate's interest in unfettered visitation is [not] guaranteed directly by the Due Process Clause. We have rejected the notion that 'any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'").

> [a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). The denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence," *Hewitt v. Helms*, 459 U.S. [460,] 468[(1983)], and therefore is not independently protected by the Due Process Clause.

*Thompson*, 490 U.S. at 460-61.[4]

In the pre-trial context, courts usually apply *Turner v. Safley*, 482 U. S. 78 (1987) to the claim of a due process violation. *Turner* held that a "regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. *Turner* established four factors that are relevant in

---

[3] The Fifth Circuit has held that there is "no constitutional basis for Zamora's complaint that her mother was removed from the prison visitation list without a formal hearing." *Zamora v. Thaler*, 407 F. App'x 802, 803 (5th Cir. 2011) (citing Sandin v. Conner, 515 U.S. 472, 483-84 (1995); *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)); *See, e.g., Chrisp v. Godfrey*, No. 1:14cv453, 2014 U.S. Dist. LEXIS 115382, *4 (M.D.N.C. June 6, 2014) ("there is no constitutional right to visitation by family members. The restriction on visitation does not constitute cruel and unusual punishment or implicate due process concerns, even without a disciplinary hearing."), *adopted by* 2014 U.S. Dist. LEXIS 113487 (M.D.N.C., Aug. 15, 2014).

[4] *Thompson* also notes "that state law may create enforceable liberty interests in the prison setting," and that the "inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations." 490 U.S. at 461. Plaintiff has not provided the Court with any of the regulations or policies in force at the local jail where he was detained. "[W]here it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, '[for] under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Block*, 468 U.S. at 583 (quoting *Bell*, 441 U.S. at 535). There is no basis to conclude that the temporary suspension of video visitation was meant as a punishment. *See Overton*, 539 U.S. at 134 ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.").

6

deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Id.* at 89. Here, the allegations in the complaint establish a valid legitimate governmental interest (enforcing a jail rule), and a ready alternative (letter writing) is available. *See, e.g., Von Minden v. Jankowski*, No. A-06-CA-823 LY, 2007 WL 1958615, at *5 (W.D. Tex. July 3, 2007) (six-month ban on visitation between current and former inmates is reasonably related to the legitimate governmental objectives of public safety and jail security), *adopted by* 2007 WL 9701717 (W.D. Tex. July 19, 2007), *aff'd*, 268 F. App'x 352 (5th Cir. 2008).[5]

*C. Cruel and Unusual Punishment*

Plaintiff's allegation that the temporary suspension of his video visitation privileges constitutes an Eighth Amendment violation has no basis in law. In *Williams v. Ozmint*, 716 F.3d 801 (2013) the Fourth Circuit observed that in *Overton*, the Court rejected "the prisoners' contention that the two-year restriction on visitation constituted cruel and unusual punishment under the Eighth Amendment." 716 F.3d at 807 (citing *Overton*, 539 U.S. at 136-37).[6]

---

[5] It is also unclear how long plaintiff was actually aware that his video visitation rights were suspended. The complaint alleges that the visitation privileges were suspended in October but Plaintiff did not become aware of the suspension of his privileges for approximately two months.

[6] The United States District Court for the Western District found a claim was that an inmate was being denied visitation because his family lived more than 500 miles from where he was detained and the Virginia Department of Corrections would not move him closer was frivolous and dismissed it pursuant to 28 U.S.C. § 1915A. The court noted that

> [t]he Eighth Amendment does not mandate comfortable prison life, but only that sufficiently grave deprivations of "the minimal civilized measure of life's necessities" by prison officials violates the Eighth Amendment. [*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)]. Moreover, Noesi must be able to plead that he suffered a "serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1380 (4th Cir. 1993). Because Noesi does not allege that he has been deprived of any sufficiently serious basic human need or suffered

7

Because he is an inmate, and amendment is not necessarily futile, Plaintiff will be allowed to amend his complaint to cure the deficiencies noted herein to state a claim upon which relief could be granted.

The amended complaint must separately number each claim that he is seeking to raise by letter or number. Each subsequent claim shall be designated by the appropriate letter or number. Each designated claim shall provide a statement of the claim and included in that statement Plaintiff shall identify the federal right he alleges has been violated. Within Plaintiff's statement of facts for each claim he must name the defendant or defendants associated with that claim, and set forth the facts associated with the claim that establish an action or omission on the part of each defendant that violated the federal right. In setting forth the specifics and facts of a claim, Plaintiff should use names rather than a generic designation of "defendant," which would assist in clarifying the matter and allow a defendant to respond. The facts must include dates as to when matters occurred. Lastly, to promote clarity, Plaintiff must separately number each paragraph of his amended complaint sequentially.

In his amended complaint, Plaintiff should refrain from presenting arguments, editorializing and trying to be dramatic, all of which inhibit the ability to comprehend the nature of the claim Plaintiff is attempting to present. If Plaintiff wishes to discuss case law or argue matters, he is free to file a separate brief or memorandum in support, but neither case law nor argument has any place in a complaint or amended complaint. Plaintiff is expressly advised that the amended complaint supersedes the original complaint. *See Rhodes v. Robinson*, 621 F.3d 1002,

---

any injury from the lack of visitation, Noesi fails to state an Eighth Amendment claim of cruel and unusual punishment and is not entitled to relief. Accordingly, the court dismisses this claim pursuant to 28 U.S.C. § 1915A(b)(1).

*Noesi v. Bledsoe*, No. 7:05cv141, 2005 U.S. Dist. LEXIS 38571, *4-5 (W.D. Va. Mar. 15, 2005), *aff'd*, 156 F. App'x 609 (4th Cir. 2005). The complaint suffers from the same deficiency.

1005 (9th Cir. 2010) (as a general rule an amended complaint supersedes "the original, the latter being treated thereafter as non-existent.") (citation omitted).

Accordingly, it is hereby

**ORDERED** that plaintiff particularize and amend his complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by (i) naming every person he wishes to include as a defendant and (ii) for each claim, he shall submit a short, detailed statement of background facts that describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought. Plaintiff must include his civil action number, **1:24cv68 (RDA/IDD)**, on the first page of his amended complaint. Plaintiff is advised that this amended complaint will serve as the sole complaint in this civil action; and it is

**FURTHER ORDERED** that plaintiff's failure to comply with any part of this Order within THIRTY (30) DAYS FROM THE DATE OF THIS ORDER, or failure to notify this Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Fed. R. Civ. P. 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff.

Entered this ___5___ day of ___June___ 2024.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

9