**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Akeem C. Mason,** <br> **Plaintiff,** | ) <br> ) <br> ) | |
| **v.** | ) | **Case No. 1:24cv68 (RDA/IDD)** |
| **Booth, *et al.*,** <br> **Defendants.** | ) <br> ) <br> ) | |

MEMORANDUM and ORDER

Akeem C. Mason, a Virginia state prisoner, has filed a civil action pursuant to 42 U.S.C. § 1983 alleging defendants—Capt. Booth; Capt. Wesley Townsend; and Maj. P. Allen—violated his First Amendment, Due Process, and Eighth Amendment rights by suspending his video visitation for 90 days for allegedly using another inmate's account. Dkt. No. 1 at 4. On June 5, 2024, the Court screened the complaint, noted deficiencies, and allowed Plaintiff leave to amend. Dkt. No. 8. On June 20, 2024, Plaintiff filed an amended complaint. Dkt. No. 9. Because Plaintiff is a prisoner, the Court must again screen his amended complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. *See* 28 U.S.C. § 1915A.[1]

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

**I. Standard of Review**

Pursuant to § 1915A, a court must dismiss claims based upon "'an indisputably meritless legal theory,'" or where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

In order to screen a complaint, it must be coherent, comprehensible, and intelligible. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A § 1983 complaint must allege facts indicating that the plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted

from conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Each named defendant in a § 1983 complaint must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010); *see Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (plaintiff must allege facts, not conclusions, "that show that an individual was personally involved in the deprivation of his civil rights."); *see also Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in § 1983 cases between named defendant and claimed injury).

A complaint must also comply with the requirements of Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and that each averment of a pleading be "simple, concise, and direct." Fed. R. Civ. P. Rule 8(a)(2) and Rule 8(e)(1). A court may dismiss a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

**II. Amended Complaint**

The amended complaint alleges that while detained at the Meherrin River Regional Jail, Alberta Facility ("MRRJ"), Plaintiff's video visitation privileges were suspended in October 2023 for 90 days for "no reason."[2] Dkt. No. 4 at 4. Plaintiff, a pre-trial detainee, alleges he was not charged with a disciplinary offense or found guilty in a disciplinary hearing of any infraction and, therefore, the suspension of his visitation rights without being found guilty in a disciplinary hearing violated his First Amendment right of free association, the Religious Land Use and

[2] Although Plaintiff's visitation was suspended in October 2023, he alleged in his original complaint that he was not notified of the suspension until December 29, 2023. Dkt. No. 1 at 4. The reason for the suspension in the original complaint was that his visitation privileges were suspended because he used another detainee's account. *Id.*

Institutionalized Persons Act ("RLUIPA"), see 42 U.S.C. §2000cc *et seq*., Due Process, and Eighth Amendment rights because he was denied a basic human need (visitation). *Id.* Defendant Booth is the supervisor of visitation and he authorized the suspension; Defendant Townsend created the rule and enforced Plaintiff's suspension; Defendant Allen answered Plaintiff's grievance; and Defendant Brett responded to Plaintiff's appeal. *Id.* Plaintiff alleges that MRRJ does not allow visits by Plaintiff's religious advisors (Muslim) and does not allow religious services (Muslim). *Id.* 4-5.

**III. Discussion**

*A. Visitation*

Section 1983 civil actions brought by pretrial detainees are evaluated under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535, 537 n. 16 (1979). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 540. In *Block v. Rutherford*, 468 U.S. 576 (1984), the Supreme Court upheld a jail's denial of all contact visits for pretrial detainees applying the same analysis it had for prison settings holding that "'[the]re is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates,'" *Id.* at 587-88 (quoting *Bell*, 441 U.S. at 546, n. 28).

The Supreme Court has long recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). *Pell v. Procunier*, 417 U. S. 817 (1974), addressed First Amendment rights in the context of incarceration holding that

> a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Id.* at 822. In 1977, *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977), reaffirmed *Pell* but added that federal courts must accord deference to the decisions of prison administrators.

> Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's "status as a prisoner" and the operational realities of a prison dictate restrictions on the associational rights among inmates.
>
> Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.

433 U.S. at 125-26; *Thorne v. Jones*, 765 F.2d 1270, 1272 (5th Cir. 1985) (holding that "'visitation privileges [for convicted prisoners] are a matter subject to the discretion of prison officials.'").

An oft cited case within the Fourth Circuit on the issue of visitation is *White v. Keller*, 438 F. Supp. 110, 116 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978), which granted summary judgment to the defendant and dismissed a constitutional challenge to a 90-day restriction on prisoner visitation imposed after some inmates were found with certain contraband. *White* observed that "[t]o the extent that the right to physical association is grounded in 'liberty,' it is obvious from the language of the fifth and fourteenth amendments that the state may wholly deprive one of it upon a criminal conviction. It is less obvious, but equally sensible, that the right is lost even if its source is the first amendment." *Id.* On appeal, the Fourth Circuit summarily

affirmed *White* and observed that the district court's decision was "thorough and carefully considered," and held that it was "correct." 588 F.2d at 913.

Here, the allegations in the amended complaint establish a valid legitimate and rational governmental interest (enforcing a jail rule), and an available ready alternative (letter writing). *See, e.g., Von Minden v. Jankowski*, No. A-06-CA-823 LY, 2007 WL 1958615, at *5 (W.D. Tex. July 3, 2007) (six-month ban on visitation between current and former inmates is reasonably related to the legitimate governmental objectives of public safety and jail security), *adopted by*, 2007 WL 9701717 (W.D. Tex. July 19, 2007), *aff'd*, 268 F. App'x 352 (5th Cir. 2008).

Further, the Supreme Court has upheld a two-year suspension of visitation privileges in an analogous situation involving prison inmates with two substance abuse convictions. *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). Plaintiff acknowledges that he had alternative means of association—he could write a letter—but he asserts it is inadequate because "children can't read or write." Dkt. No. 9 at 5. *Overton* rejected the argument that letter-writing is not a legitimate alternative holding that "[a]lternatives to visitation need not be ideal, however; they need only be available." 539 U.S. at 135. In any event, he does not identify a single family member that he attempted to contact during the 90-day period that he was not able to contact by letter. To be sure, nearly all of the entire 90-day suspension passed without Plaintiff even being aware that it had been imposed in October 2023 because he admits he was unaware of the suspension until "until 12/29/23." Dkt. No. 1 at 4. Accordingly, this claim will be dismissed for failure to state a claim.

*B. RLUIPA*

In his amended complaint, Plaintiff asserts a conclusory RLUIPA claim alleging visitations between he and his "religious advisers were stopped," and that MRRJ does "not provide Muslim religious services." Dkt. No. 9 at 4. To state a claim under RLUIPA, Plaintiff must plead that "he

wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010). Plaintiff bears the initial burden of showing that the jail's policy creates a substantial burden on his religious exercise. If he makes such a showing, the burden shifts to the defendants to show that the policy furthers a compelling state interest by the least restrictive means. 42 U.S.C. § 2000cc-2 (b). "In particular, the government must prove that the burden in question is the least restrictive means of furthering a compelling governmental interest." *Lovelace*, 472 F.3d at 186.

The RLUIPA allegation is conclusory and does not satisfy the elemental components of a RLUIPA claim. *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (in reviewing a claim under Rule 12(b)(6), "court is not bound by the complaint's legal conclusions") (citation omitted); *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (plaintiff must allege facts, not conclusions, "that show that an individual was personally involved in the deprivation of his civil rights."). Initially, there is no indication of the date of any RLUIPA violation, the name of his religious adviser, no averment facts supporting the elements of a RLUIPA claim, and no identification of a defendant associated with any alleged denial. Plaintiff does not even aver that he is Muslim, that he has a sincere religious belief, or explain how he was substantially burden in light of his original allegation that he was unaware of the suspension of visitation until December 29, 2023, Dkt. No. 1 at 4, at which time the period of suspension was nearly over. Accordingly, this claim will be dismiss for failure to state a claim.

*C. Due Process*[3]

To the extent Plaintiff alleges the temporary suspension of his video visitation privileges violated due process, an inmate has no due process right to "unfettered visitation." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (holding that "an inmate's interest in unfettered visitation is [not] guaranteed directly by the Due Process Clause. We have rejected the notion that 'any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'"). The Supreme Court has further recognized that:

> As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). The denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence," *Hewitt v. Helms*, 459 U.S. [460,] 468[(1983)], and therefore is not independently protected by the Due Process Clause.

*Thompson*, 490 U.S. at 460-61.[4]

In the pre-trial context, courts usually apply *Turner v. Safley*, 482 U. S. 78 (1987) to the claim of a due process violation. *Turner* held that a "regulation is valid if it is reasonably related

[3] The Fifth Circuit has held that there is "no constitutional basis for Zamora's complaint that her mother was removed from the prison visitation list without a formal hearing." *Zamora v. Thaler*, 407 F. App'x 802, 803 (5th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)); *See, e.g., Chrisp v. Godfrey*, No. 1:14cv453, 2014 U.S. Dist. LEXIS 115382, *4 (M.D.N.C. June 6, 2014) ("there is no constitutional right to visitation by family members. The restriction on visitation does not constitute cruel and unusual punishment or implicate due process concerns, even without a disciplinary hearing"), *adopted by* 2014 U.S. Dist. LEXIS 113487 (M.D.N.C. Aug. 15, 2014).

[4] *Thompson* also notes "that state law may create enforceable liberty interests in the prison setting," and that the "inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations." 490 U.S. at 461. Plaintiff has not provided the Court with any of the regulations or policies in force at the local jail where he was detained. "[W]here it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, '[for] under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Block*, 468 U.S. at 583 (quoting *Bell*, 441 U.S. at 535). There is no basis to conclude that the temporary suspension of video visitation was meant as a punishment. *See Overton*, 539 U.S. at 134 ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.").

to legitimate penological interests." *Id.* at 89. *Turner* established four factors that are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Id.* at 89. Here, the allegations in the complaint establish a valid legitimate governmental interest (enforcing a jail rule), and a ready alternative (letter writing) is available. *See, e.g., Von Minden*, 2007 WL 1958615, at *5. Accordingly, this claim will also be dismissed for failure to state a claim.[5]

*D. Eighth Amendment*

Plaintiff's allegation that the temporary suspension of his video visitation privileges constitutes an Eighth Amendment violation has no basis in law. In *Williams v. Ozmint*, 716 F.3d 801 (4th Cir. 2013) the Fourth Circuit observed that in *Overton*, the Court rejected "the prisoners' contention that the two-year restriction on visitation constituted cruel and unusual punishment under the Eighth Amendment." 716 F.3d at 807 (citing *Overton*, 539 U.S. at 136-37). To the extent that Plaintiff alleges that the suspension of his visitation privileges constitutes the denial of a basic human need, such claims have been found to be without merit.[6] Asserting that he lost his girlfriend

---

[5] As noted herein, it is also unclear how long plaintiff was actually aware that his video visitation rights were suspended. The complaint alleges that the visitation privileges were suspended in October but Plaintiff did not become aware of the suspension of his privileges for over two months.

[6] The Western District found an inmate's claim that he was being denied visitation because his family lived more than 500 miles from where he was detained and the Virginia Department of Corrections would not move him closer was frivolous and dismissed it pursuant to 28 U.S.C. § 1915A. The court noted that

> [t]he Eighth Amendment does not mandate comfortable prison life, but only that sufficiently grave deprivations of "the minimal civilized measure of life's necessities" by prison officials violates the Eighth Amendment. [*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)]. Moreover, Noesi must be able to plead that he suffered a "serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1380 (4th Cir. 1993). Because Noesi

due to the denial of visitation and his alleged mental health/suicide watch status is conclusory, and there is no allegation of a temporal nexus to support the causation aspect of such a claim. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation") (citing *Murray v. Earle*, 405 F.3d 278, 289-90 (5th Cir. 2005); *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999). Accordingly, Plaintiff has failed to state a claim under the Eighth Amendment and this claim will be dismissed.

*E. Grievances*

To the extent Plaintiff alleges that any of the Defendants denied him his rights because they answered a grievance or denied the appeal of the grievance, he has also not stated a claim. First, it is clear that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Scott v. Kelly*, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000) ("It is well established that inmates do not have a constitutionally protected right to participate in a prison grievance procedure." (cleaned up)). Second, as indicated above, "[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Consequently, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation"); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance,

---

> does not allege that he has been deprived of any sufficiently serious basic human need or suffered any injury from the lack of visitation, Noesi fails to state an Eighth Amendment claim of cruel and unusual punishment and is not entitled to relief. Accordingly, the court dismisses this claim pursuant to 28 U.S.C. § 1915A(b)(1).

*Noesi v. Bledsoe*, No. 7:05cv141, 2005 U.S. Dist. LEXIS 38571, *4-5 (W.D. Va. Mar. 15, 2005), *aff'd*, 156 F. App'x 609 (4th Cir. 2005). The amended complaint suffers from the same deficiency.

by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'") (citation omitted).

Because he is an inmate, and amendment is not necessarily futile, Plaintiff will be allowed to amend his complaint to cure the deficiencies noted herein to state a claim upon which relief could be granted.

The amended complaint must separately number each claim that he is seeking to raise by letter or number. Each subsequent claim shall be designated by the appropriate letter or number. Each designated claim shall provide a statement of the claim and included in that statement Plaintiff shall identify the federal right he alleges has been violated. Within Plaintiff's statement of facts for each claim he must name the defendant or defendants associated with that claim, and set forth the facts associated with the claim that establish an action or omission on the part of each defendant that violated the federal right. In setting forth the specifics and facts of a claim, Plaintiff should use names rather than a generic designation of "defendant," which would assist in clarifying the matter and allow a defendant to respond. The facts must include dates as to when matters occurred. Lastly, to promote clarity, Plaintiff must separately number each paragraph of his amended complaint sequentially.

In his second amended complaint, Plaintiff should refrain from presenting arguments, editorializing and trying to be dramatic, all of which inhibit the ability to comprehend the nature of the claim Plaintiff is attempting to present. If Plaintiff wishes to discuss case law or argue matters, he is free to file a separate brief or memorandum in support, but neither case law nor argument has any place in a complaint or amended complaint. Plaintiff is expressly advised that the second amended complaint supersedes the original complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (as a general rule an amended complaint supersedes "the original, the latter being treated thereafter as non-existent.") (citation omitted).

Accordingly, it is hereby

**ORDERED** that plaintiff particularize and amend his complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by (i) naming every person he wishes to include as a defendant and (ii) for each claim, he shall submit a short, detailed statement of background facts that describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the ***dates*** of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought. Plaintiff must include his civil action number, **1:24cv68 (RDA/IDD)**, on the first page of his second amended complaint. Plaintiff is advised that this second amended complaint will serve as the sole complaint in this civil action; and it is

**FURTHER ORDERED** that the Clerk update Plaintiff's address to: Akeem C. Mason, No. 1404600, VA DOC Centralized Mail Distribution Center, 3521 Woods Way, State Farm, VA 23160;[7] and it is

**FURTHER ORDERED** that plaintiff's failure to comply with any part of this Order within THIRTY (30) DAYS FROM THE DATE OF THIS ORDER, or failure to notify this Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Fed. R. Civ. P. 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff.

Entered this 20 day of November 2024.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

[7] Plaintiff filed a notice of change of address in *Mason v. Wright, et al.*, No. 1:24cv129, Dkt. No.7.